ESTATE OF SAMUEL ROSENBERG, DECEASED; ELLIOT APPEL, EXECUTOR AND BEATRICE ROSENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BEATRICE ROSENBERG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Rosenberg v. Commissioner
Docket No. 9268-85, 9269-85.
United States Tax Court
T.C. Memo 1987-59; 1987 Tax Ct. Memo LEXIS 55; 52 T.C.M. (CCH) 1532; T.C.M. (RIA) 87059; January 27, 1987. *55 Harvey J. Greece, for the petitioners. Beth L. Williams, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in income tax due from petitioners as follows: Petitioners
Docket No.
Year
Deficiency
Estate of Samuel
9268-85
1979
$27,293
Rosenberg, Elliot
Appel, Executor, and
Beatrice Rosenberg
Beatrice Rosenberg
9269-85
1980
$31,690
Beatrice Rosenberg
9269-85
1981
$37,341
The only issue for decision is whether certain installment payments made under a sales contract constituted payments for a covenant not to compete or were amounts paid for goodwill. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Samuel Rosenberg ("Rosenberg") died on March 10, 1979. At the time of his death, both he and his wife Beatrice Rosenberg, were residents of Milton, Massachusetts. Elliott Appel is the executor of Rosenberg's estate. Both the executor and the widow were residents of Massachusetts when the petitions were filed in this case. Prior *56 to May 1978, Rosenberg was the sole shareholder and president of Muro Pharmacal Laboratories, Inc. ("Muro"), a Massachusetts corporation, engaged in the business of manufacturing and selling prescription eyedrops and eye ointments to hospitals and drug wholesalers. He had been in the business of manufacturing opthalmic products for nearly a quarter of a century and was widely recognized in the industry for the 35 different products he had developed. Three of the products developed by Rosenberg accounted for most of Muro's sales during 1978 because these products had no significant competition. These three products, Muro 128 Solution and Ointment ("Muro 128"), No. 35 Murocoll Methylcellulose 1% Preparation ("Murocoll"), and Muro Petroleum Ointment ("Muro Ointment"), were not protected by copyrights or patents. During 1978, negotiations commenced between Rosenberg and George Behrakis ("Behrakis") for the sale of Muro. Behrakis was primarily interested in the acquisition of Rosenberg' secret chemical formulations and manufacturing processes used in the production of Muro 128, Murocoll and Muro Ointment.However, during the negotiations, Behrakis and his attorney, Richard Floor, *57 repeatedly mentioned to Rosenberg and his attorney, Israel Bernstein, that a significant part of Muro's acquisition had to be a covenant by Rosenberg not to compete. Behrakis felt that the noncompetition covenant was necessary because without its protection Rosenberg could have been employed by one of Behrakis' competitors to use his formulas and manufacturing processes to Behrakis' detriment. On May 31, 1978, Rosenberg and Muro, as sellers, entered into an agreement with Behrakis and GDB, Inc., as purchasers. The agreement encompassed a sale by Muro of all of its assets including its name and covenants by Rosenberg not to compete and to provide certain consulting services. The pertinent parts of the agreement are as follows: I. Sellers agree that at a Closing to be held at the offices of Goodwin, Procter & Hoar at 11:00 a.m. on June 14, 1978 or such other date as may be mutually agreed by the parties (hereinafter called the "Closing Date") upon payment by the Buyers to Muro of the Purchase Price as hereinafter defined, Muro will transfer to Buyers by execution of a Bill of Sale in the form attached hereto as Exhibit A all of its assets, tangible and intangible (other than *58 cash and accounts receivable and those items listed on Schedule B) as they exist on the date hereof, including specifically but not limited to (i) all of the machinery and equipment, inventory, trademarks (which may or may not be registered), tradenames, and drug products listed on Schedule C (ii) all rights to all formulas, formulation methods and similar information used in carrying on the business of Muro, and (iii) all goodwill associated with the name "Muro Pharmacal Laboratories" and the products presently manufactured by it. Sellers also agree, immediately after the payment of the Purchase Price, to cause the name of Muto [sic] to be changed to a new name not including the words Muro Pharmacal Laboratories. II. Sellers agree that in exchange for the Subsequent Payments to Rosenberg as hereinafter defined, Rosenberg will refrain from competing directly or indirectly or aiding the competition by others with the manufacture and sale by Buyers of the products listed on Schedule C or any similar products. Sellers shall not be deemed to have violated their agreement hereunder if, within seven days after written notice from Buyers, they cease and desist from the competitive *59 activity unless irreparable harm has already occurred to Buyers. Sellers also agree that to facilitate the effective transfer of the business and operations presently carried on by Sellers to Buyer, Rosenberg will make himself available for no less than ten hours per week for the first month following the Closing and five hours per week in each of the two following months, at times to be mutually agreed, for the purpose of supplying to Buyers whatever information is required by Buyers to carry forward that business presently operated by Muro. III. In consideration of the agreements of Sellers, Buyers agree to pay a total of $400,000 composed of the initial Purchase Price of $75,000 and Subsequent Payments of $325,000 secured by an Irrevocable Letter of Credit all as follows:
(a) the sum of ten thousand dollars as a down payment upon the execution hereof and the balance of sixty-five thousand dollars ($65,000.00) by certified check paid on the Closing date against delivery of the Bill of Sale (the "Purchase Price");
(b) the sum of (i) seventy-five thousand dollars ($75,000.00) upon the expiration of one year from the Closing Date (ii) seventy-five thousand dollars *60 ($75,000.00) upon the expiration of each of the second and third years from the Closing Date and (iii) the final sum of one hundred thousand dollars upon the expiration of the fourth year from the Closing Date (herein referred to collectively as the "Subsequent Payments");
* * * V. Sellers agree that they will make provision for the payment of all accounts and other amounts payable or becoming payable by Muro arising out of the operations of Muro prior to date hereof (all subsequent expenses incurred in connection with normal operations between the date hereof and the closing being for the account of the Buyers) and will hold Buyers harmless against and indemnify them for any damage or harm caused to Buyers arising from any material liability, default, obligation or claim arising out of the operations of Muro prior to the date hereof. If any action shall be brought or claim made against Buyers as to which indemnity may be sought, Buyers shall promptly notify Sellers in writing and Sellers shall assume the defense thereof. Sellers shall not be liable for any settlement effected without their consent unless they shall have refused or neglected to undertake the defense thereof. *61 [Emphasis supplied.] Before the agreement was executed Bernstein explained its terms to Rosenberg. Rosenberg also read the agreement in its entirety. He never expressed to Bernstein any concern or disagreement with the allocation made in the agreement of the $400,000 in total payments. After the closing, Rosenberg rendered the consulting services required by the sales agreement until March 10, 1979, when he suffered a fatal heart attack. During this period, he spent approximately one and one-half hours three to four times per week instructing Behrakis' employees on how to manufacture and package the opthalmic products. All payments due under the sales agreement were paid to Rosenberg or his estate on the dates and in the amounts provided by the sales agreement. [1] A joint income tax return was filed for 1979 for Beatrice Rosenberg and her deceased husband. She filed individual income tax returns for 1980 and 1981. The installment payments received in 1979, 1980 and 1981 were not reported on these returns. Respondent determined that the installment payments received in 1979, 1980 and 1981 were made with respect to the covenant not to compete and constituted ordinary income. *62 Petitioners contend that the payments were made with respect to goodwill and they are entitled to treat them as capital gains. OPINION The parties agree that petitioners must recognize as ordinary income that portion of the purchase price which is allocable to the covenant not to compete. They also agree that to the extent the purchase price is allocable to goodwill, petitioners are entitled to report is as capital gain. Petitioners have the burden of proving that respondent's determination is erroneous. ; Rule 142(a).[2]
Petitioners argue that the allocation made in the agreement of $325,000 to the covenant not to compete and $75,000 to goodwill, machinery, inventory, and *63 the other assets of Muro, has absolutely no basis in economic reality and that they should be permitted to reallocate the purchase price in accordance with the actual value of the various assets. Respondent argues that petitioners are bound by the unambiguous terms of the sales agreement. We agree with respondent. Over the years, various approaches have been utilized to allocate the sales price of a business between goodwill and a covenant not to compete. See , affd. sub nom. ; and . We, however, have consistently placed heavy emphasis upon the intention of the parties as expressed in their contract of sale. ;;; . Our approach has been approved by the First Circuit, in , *64 where it is stated at page 212: a taxpayer may vary the allocation stated, or implicit, in the agreement by, but only by, establishing that the parties, who have competing tax interests in the matter, agreed on a different figure when they signed the contract. * * * Furthermore, a taxpayer, attempting to establish an allocation other than that set forth in the sales agreement, cannot rely on a mere preponderance of the evidence to carry his burden of proof. He must present "strong proof" that his proposed reallocation represents the intent of the parties at the time the agreement was entered into. ; . Even if we assume petitioners have established that the allocation set forth in the agreement is contrary to the economic realities of the situation, we would be unable to agree with petitioners because the First Circuit to which these cases are appealable has adopted a rule of intention and rejected the economic reality rule. . Under our rule *65 in , affd. , cert. denied , we are constrained to follow the First Circuit. . From the record before us we are unable to find that the parties intended any allocation other than that set forth in their agreement. To find otherwise we would have to believe that Rosenberg intended a different allocation at the time the contract was entered into even though he never expressed such intentions during the negotiations, during Bernstein's explanation of the agreement, or at its execution. Under these circumstances we cannot arrive at such a belief. We conclude, therefore, that petitioners have failed to present the requisite "strong proof" that the parties intended an allocation other than that set forth in the agreement. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Under the agreement each of the payments was to be $75,000. However, the second $75,000 payment was reduced by $8,325.40 to adjust for certain goods sold by Muro prior to Behrakis' purchase.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩